IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LANCE MICHAEL STAMPFLI,

                      Plaintiff,

   v.

PACCAR, INC. d/b/a KENWORTH
TRUCK COMPANY and WISCONSIN
KENWORTH, LLC d/b/a WISCONSIN
KENWORTH,

                      Defendants.

OPINION AND ORDER

17-cv-751-wmc

---

Plaintiff Lance Michael Stampfli originally filed a complaint against defendants PACCAR and Wisconsin Kenworth in the Portage County Circuit Court for breach of warranty.[1] (*See* dkt. #1-1.) The defendants filed a timely notice of removal to this court, alleging diversity jurisdiction based on Stampfli's fraudulent joiner of defendant Wisconsin Kenworth.[2] (*See* dkt. #1.) Stampfli then sought remand (dkt. ##6-7), which defendant PACCAR opposes. (Dkt. #10).

---

[1] The parties are inconsistent in how they refer to the defendants. For consistency and clarity, the court will refer to PACCAR, Inc. d/b/a Kenworth Truck Company as "PACCAR" and Wisconsin Kenworth, LLC d/b/a Wisconsin Kenworth as "Wisconsin Kenworth."

[2] Despite receiving the notice of removal the Portage County Circuit Court scheduled a conference for May 22, 2018. Following a request to adjourn that conference in early May, that court recognized the notice of removal and ordered the state case be dismissed without prejudice within 20 days "unless good cause is shown." (*Stampfli v. PACCAR, Inc.*, No. 2017CV000256 Docket at 2.)

## BACKGROUND[3]

### A. Truck Purchase

In September 2016, Stampfli, a Wisconsin resident, purchased a new 2017 Kenworth model t880 truck for $193,925 from Wisconsin Kenworth, a Wisconsin limited liability company whose sole member, CSM Companies, Inc., is a Wisconsin corporation, with its principal place of business in Madison, WI. Wisconsin Kenworth appears to be an authorized dealer of Kenworth Truck Company ("Kenworth") trucks, parts and service, as well as PACCAR engines, parts and service. Plaintiff alleges that the truck he purchased was manufactured or distributed by PACCAR, "a foreign business corporation licensed to do business in the State of Wisconsin," with its principal place of business in Bellevue, Washington. (Compl. (dkt. #1-1) ¶¶ 2, 7.)[4]

The motor vehicle purchase contract between Stampfli and Wisconsin Kenworth states that the truck was "sold AS IS," with "the dealer assum[ing] no responsibility for any repairs" and "disclaim[ing] implied warranties of merchantability and fitness for a particular purpose." (Purchase Contract (dkt. #2-1) 1.) The contract also twice specifies that the "[d]ealer is not a party to any manufacturer warranties." (*Id.*)

Upon purchase, Stampfli also received a Kenworth Limited Warranty and a PACCAR Engine Limited Warranty. The Kenworth limited warranty provides in part:

---

[3] The following facts are derived from plaintiff's complaint, the notice of removal, and the parties' briefing on plaintiff's motion to remand.

[4] In its notice of removal, PACCAR specifies that it is incorporated in the state of Delaware. (Not. Removal (dkt. #1) ¶ 10.)

THIS LIMITED WARRANTY AGREEMENT ("AGREEMENT") LISTS THE RESPECTIVE RIGHTS AND RESPONSIBILITIES OF YOU, KENWORTH TRUCK COMPANY ("KENWORTH"), AND THE SELLING KENWORTH DEALER ("SELLING DEALER"). PLEASE READ THIS LIMITED WARRANTY CAREFULLY.

Kenworth warrants directly to you that the Kenworth vehicle ("Vehicle") identified below will be free from defects in materials and factory workmanship ("Warrantable Failures") appearing under normal commercial use and service during the time or mileage limitations set forth in the attached Warranty Schedule (dated 11/09). The Vehicle warranty extends only to you, the First Purchaser.

YOUR SOLE AND EXCLUSIVE REMEDY AGAINST KENWORTH AND THE SELLING DEALER ARISING FROM YOUR PURCHASE AND USE OF THIS VEHICLE IS LIMITED TO THE REPAIR OR REPLACEMENT OF "WARRANTABLE FAILURES" AT AUTHORIZED UNITED STATES AND CANADIAN KENWORTH DEALERS, SUBJECT TO KENWORTH'S TIME AND MILEAGE LIMITATIONS LISTED IN THE ATTACHED VEHICLE ONLY WARRANTY SCHEDULE. The maximum time and mileage limitations in the Warranty Schedule begin on the Date of Delivery to the First Purchaser, as shown below. The accrued time and mileage is calculated when this Vehicle is brought into an Authorized Dealer for correction of Warrantable Failures.

**WARRANTY DISCLAIMER AND LIMITATIONS OF LIABILITY**

This limited warranty is the sole warranty made by Kenworth and the Selling Dealer. Except for the above limited warranty, Kenworth and the Selling Dealer make no other warranties, express or implied. KENWORTH AND THE SELLING DEALER EXPRESSLY DISCLAIM ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

(Kenworth Truck Warranty (dkt. #2-2) 1.) The PACCAR limited warranty provides:

THIS LIMITED WARRANTY AGREEMENT ("AGREEMENT") LISTS THE RESPECTIVE RIGHTS AND RESPONSIBILITIES OF YOU, PACCAR INC ("PACCAR"), AND THE SELLING PACCAR ENGINE DEALER ("SELLING DEALER"). PLEASE READ THIS LIMITED WARRANTY CAREFULLY.

PACCAR warrants directly to you that the PACCAR MX engine ("Engine") identified below will be free from defects in materials and factory workmanship ("Warrantable Failures") appearing under normal commercial use and service during the time or mileage or hour limitations set forth in the attached Warranty Schedule (dated 3/10). The Engine warranty extends only to you, the First Purchaser. The Emissions warranty is made to all owners of the Engine in the chain of distribution until the end of the Emissions warranty coverage period. Warranty coverage relating to the emissions components is outlined in the Emission Warranty section of the PACCAR MX Operator's Manual, the terms and conditions of which are incorporated herein by reference.

YOUR SOLE AND EXCLUSIVE REMEDY AGAINST PACCAR AND THE SELLING DEALER ARISING FROM YOUR PURCHASE AND USE OF THIS ENGINE IS LIMITED TO THE REPAIR OR REPLACEMENT OF "WARRANTABLE FAILURES" AT AUTHORIZED UNITED STATES AND CANADIAN PACCAR ENGINE DEALERS, OR AN AUTHORIZED PACCAR ENGINE FACILITY WHERE APPLICABLE, (REFERRED TO AS "AUTHORIZED DEALER" OR "AUTHORIZED DEALERS") SUBJECT TO PACCAR'S TIME, MILEAGE, AND HOUR LIMITATIONS LISTED IN THE ATTACHED WARRANTY SCHEDULES The maximum time, mileage and hour limitations in the Warranty Schedules begin running on the Date of Delivery to the First Purchaser, as shown below. The accrued time, mileage, or hours is calculated when this engine is brought into an Authorized Dealer for correction of Warrantable Failures.

**WARRANTY DISCLAIMER AND LIMITATIONS OF LIABILITY (ENGINE AND EMISSIONS)**

This limited warranty is the sole warranty made by PACCAR and the Selling Dealer. Except for the above limited warranty, PACCAR and the Selling Dealer make no other warranties, express or implied. PACCAR AND THE SELLING DEALER EXPRESSLY DISCLAIM ANY WARRANTY OF MERCHANTABILITY OR WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE.

(PACCAR Engine Warranty (dkt. #2-3) 1.) Both warranties are signed by Wisconsin Kenworth's "Director of Fleet Sales." (Kenworth Truck Warranty (dkt. #2-2) 2; PACCAR Engine Warranty (dkt. #2-3) 2, 4, 5.) Nevertheless, PACCAR maintains that its authorized dealer Wisconsin Kenworth was not a party to either warranty.

### B. Alleged Breach of Express Warranty

Stampfli has identified thirteen problems that he alleges constitute "Warrantable Failures":

      A. The Truck's steering wheel is not straight.
      B. The Truck drifts right or left when it should proceed straight. . . .
      C. Sometimes the power takeoff does not engage and it does not engage above the third gear.

3

  D. Sometimes the Truck will not exceed approximately 2 mph [when] the power takeoff is engaged, making it impossible to perform a typical "dump and run" . . . .
  E. The Truck's transmission "clunks" between the 7th and 8th [g]ears. The transmission sometimes "skips."
  F. The Truck's heating system malfunctions . . . .
  G. The Truck "clunks" on the right front especially when loaded.
  H. The Truck's dashboard and upper console rattles and the seatbelt squeaks at or near the driver post.
  I. With foot on the Truck's break, the Truck won't start and will not engage into gear.
  J. The Truck's brakes squeal and will start to grind when moving in reverse and also, on occasion, when going forward.
  K. The Truck's shift timing is not synchronized.
  L. Sometimes the Truck will not move, requiring moving the lever to "N" and then back to "D" or to manual.
  M. If the Truck is stopped and put in "R" and the brakes applied, "R2" displays and "dings" and the vehicle will not move.

(*Id.* ¶¶ 10-11.) Plaintiff alleges that he provided notice of these breaches of warranty, but the defendants "have not remedied or repaired the Warrantable Failures." (*Id.* ¶ 13.)

### C. Alleged Basis for Removal

In its notice of removal, PACCAR alleges that this court has jurisdiction over the dispute based on the diversity of parties and the amount in controversy exceeding $75,000. (*See* Not. Removal (dkt. #1) ¶ 4.) Specifically, PACCAR alleges that: (1) "Wisconsin Kenworth's citizenship is irrelevant for diversity purposes and should be disregarded because plaintiff fraudulently joined it as a party for the sole purpose of defeating diversity of citizenship in this case" (*id.* ¶ 5); and (2) Stampfli seeks in excess of $75,000 because he is trying to recover "the reasonable costs of the repair or replacement of the alleged warrantable failures, and the vehicle has a base purchase price of $193,925," plus costs and

attorneys' fees (*id.* ¶¶ 13-14).  Stampfli disputes both allegations.

OPINION

I. **Fraudulent Joinder**

In order for a federal court to have diversity jurisdiction, other than in a class action setting, there must be complete diversity between the plaintiff(s) and defendant(s), and the dispute must have at least $75,000 in controversy, exclusive of costs and interest.  28 U.S.C. § 1332(a).  When a plaintiff brings suit in state court and these two requirements are facially satisfied by the pleadings, a defendant may remove the case to federal court under 28 U.S.C. § 1441(a).  As is the case here, a defendant may seek to remove to federal court where complete diversity is lacking on the face of the complaint, but would be satisfied if the non-diverse party were shown to be "fraudulently joined."  *See Kasal v. Stryker Corp.*, No. 17-CV-1001-JPS, 2017 WL 4162312, at *2 (E.D. Wis. Sept. 19, 2017) (citing *Morris v. Nuzzo*, 718 F.3d 660, 666 (7th Cir. 2013)) ("The fraudulent joinder doctrine is an exception to the requirement of complete diversity.").

Typically, fraudulent joinder "involves a claim against an in-state defendant that simply has no chance of success, [regardless of] the plaintiff's motives."  *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73-74 (7th Cir. 1992) (finding fraudulent joinder because plaintiff had no chance of recovering against the in-state defendant in state court); *Kasal*, 2017 WL 4162312 at *2 ("'[A]n out-of-state defendant's right to removal premised on diversity cannot be defeated by joinder of a nondiverse defendant against whom the plaintiff's claim

has no chance of success.'" (quoting *Morris*, 718 F.3d at 666)).[5] The fraudulent joinder doctrine allows a district court to "disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Kasal*, 2017 WL 4162312 at *2 (quoting *Morris*, 718 F.3d at 666). While the doctrine recognizes that a plaintiff should not be allowed to "join a nondiverse defendant simply to destroy jurisdiction," *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 763 (7th Cir. 2009), a defendant seeking removal on this basis bears "a heavy burden to establish fraudulent joinder"; specifically, it "must show that, after resolving all issues of fact *and law* in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant," *Poulos*, 959 F.2d at 73 (emphasis in original) (internal citation omitted). "Put another way, there is a strong presumption in favor of remand," with the removal statute interpreted "narrowly" and deference shown to plaintiff's choice of "his or her forum." *Rutherford*, 428 F. Supp. 2d at 846 (citing *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993)); *Jones v. General Tire & Rubber Co.*, 541 F.2d 660, 664 (7th Cir. 1976)). Moreover, a district court's review "is even weaker than that applied to a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)," meaning that the court should deny remand only if the claims asserted against the nondiverse defendant are "wholly insubstantial and frivolous." *Kasal*, 2017 WL

---

[5] Of course, "false allegations of jurisdictional facts may [also] make joinder fraudulent." *Poulos*, 959 F.2d at 73. The Eleventh Circuit has recognized "fraudulent misjoinder," an "'egregious' misjoinder of claims that is tantamount to fraudulent joinder," although the Seventh Circuit has not yet reason to recognize the fraudulent misjoinder doctrine. *Rutherford v. Merck & Co., Inc.*, 428 F. Supp. 2d 842, 850-51 (S.D. Ill. 2006) (citing *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir. 1996)).

4162312 at *2 (citing *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3d Cir. 1992)).

In considering a claim of fraudulent joinder, the court may look beyond the complaint. *See Faucett v. Ingersoll-Rand Min. & Machinery Co.*, 960 F.2d 653, 655 (7th Cir. 1992) (nondiverse defendant repairman's uncontradicted affidavit stating that he had nothing to do with the injury-causing machine established fraudulent joinder). However, even this inquiry is "strictly circumscribed" and "limited to uncontroverted summary evidence which establishes unmistakably that a diversity-defeating defendant cannot possibly be liable to a plaintiff under applicable state law." *Rutherford*, 428 F. Supp. 2d at 847-48 (citations omitted). If doubt remains about the appropriateness of removal, the case should be remanded. *See Jones.*, 541 F.2d at 664 (explaining that for cases removed under federal question jurisdiction, "the federal nature of the claim must be a basic issue in the case" (internal citation omitted)); *see also Schur*, 577 F.3d at 758 ("The party seeking removal has the burden of establishing federal jurisdiction, and federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court"). Notwithstanding defendants' assertions to the contrary, this is such a case.

PACCAR asserts that Wisconsin Kenworth was fraudulently joined because "plaintiff has no reasonable probability of success against Wisconsin Kenworth for breach of express warranty." (Not. Removal (dkt. #1) ¶ 28.) Having reviewed the purchase contract and the warranties, however, liability under the warranties would appear to flow jointly and severally to either defendant and perhaps to Kenworth. Indeed, given that Kenworth itself was not sued directly, plaintiff's sole remedy for the myriad, alleged truck

defects subject to warranty, as opposed to engine defects, would appear to be against its authorized truck dealer, defendant Wisconsin Kenworth, at least at this juncture in this lawsuit.

Courts charged with contract construction aim "to ascertain the true intentions of the parties as expressed by the contractual language" with the purpose of "determin[ing] what the parties contracted to do as evidenced by the language they saw fit to use." *State ex rel. Journal/Sentinel, Inc. v. Pleva*, 155 Wis. 2d 704, 711, 456 N.W.2d 359, 362 (1990). Additionally, "an agreement should be given a reasonable meaning so that no part of the contract is surplusage." *Id.* When contractual language is ambiguous, the court can examine extrinsic evidence to determine what the parties intended. *See Town Bank v. City Real Estate Develop., LLC*, 2010 WI 134 ¶ 33. Inconsistent provisions are ambiguous. *Spencer v. Spencer*, 140 Wis.2d 447, 451, 410 N.W.2d 629 (Wis. App. 1987).

At the time Stampfli purchased the 2017 Kenworth T880 truck, he entered into a motor vehicle purchase contract, as well as into the two warranty agreements. (*See* Purchase Contract (dkt. #2-1); Kenworth Truck Warranty (dkt. #2-2) 2; PACCAR Engine Warranty (dkt. #2-3) 2.) All three agreements were executed on September 6, 2016, to effectuate Stampfli's truck purchase; accordingly, all three must be read together. In fact, the motor vehicle purchase contract specifically references the "manufacturer warranties" (Purchase Contract (dkt. #2-1) 1), further tying these agreements together. In fairness, the purchase contract expressly provides that: the "[d]ealer is not a party to any manufacturer warranties"; the "[d]ealer disclaims implied warranties of merchantability and fitness for a particular purpose"; and "this vehicle is sold AS IS and the dealer assumes

8

no responsibility for any repairs regardless of any oral statements about the vehicle." (*Id.*) Despite these admonitions however, the contemporaneous warranty agreements purport to "LIST[] THE RESPECTIVE RIGHTS AND RESPONSIBILITIES OF YOU, KENWORTH TRUCK COMPANY ('KENWORTH') [PACCAR INC. ('PACCAR')], ***AND THE SELLING KENWORTH [PACCAR ENGINE] DEALER ('SELLING DEALER')***." (Kenworth Truck Warranty (dkt. #2-2) 1 (emphasis added); PACCAR Engine Warranty (dkt. #2-3) 1 (emphasis added).) Moreover, the truck purchaser is advised that "YOUR SOLE AND EXCLUSIVE REMEDY AGAINST KENWORTH [PACCAR] ***AND THE SELLING DEALER*** ARISING FROM YOUR PURCHASE AND USE OF THIS VEHICLE [ENGINE] IS LIMITED TO THE REPAIR OR REPLACEMENT OF 'WARRANTABLE FAILURES' AT AUTHORIZED UNITED STATES AND CANADIAN KENWORTH [PACCAR ENGINE] DEALERS," subject to certain limitations. (Kenworth Truck Warranty (dkt. #2-2) 1 (emphasis added); PACCAR Engine Warranty (dkt. #2-3) 1 (emphasis added).) Even more inconsistent with Wisconsin Kenworth's disclaimers in the purchase contract, both warranty agreements state: "This limited warranty is the sole warranty made by Kenworth [PACCAR] *and the Selling Dealer*. Except for the above limited warranty, Kenworth [PACCAR] *and the Selling Dealer* make no other warranties, express or implied."[6] Finally, the director of fleet sales at Wisconsin Kenworth also signed both agreements, as well as the purchase contract. (*See*

---

[6] Even the disclaimers imply the joint and several nature of the warranties: "IT IS AGREED THAT KENWORTH [PACCAR] *AND THE SELLING DEALER* SHALL NOT BE LIABLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES." (Kenworth Truck Warranty (dkt. #2-2) 1 (emphasis added); PACCAR Engine Warranty (dkt. #2-3) 1 (emphasis added).)

Kenworth Truck Warranty (dkt. #2-2) 2; PACCAR Engine Warranty (dkt. #2-3) 2; Purchase Contract (dkt. #2-1) 1.)[7]

Parol evidence could be used to determine the parties' intentions and resolve this ambiguity, however, that would go beyond this court's limited review at the remand stage. *See Rutherford*, 428 F. Supp. 2d at 847-48 (describing inquiry as "extremely narrow," "strictly circumscribed," and "limited to uncontroverted summary evidence"); *Kasal*, 2017 WL 4162312 at *2 (describing review as "even weaker than that applied to a motion to dismiss"); *cf. Faucett*, 960 F.2d 653, 655 (relying on nondiverse defendant's uncontradicted affidavit to establish fraudulent joinder); *see also Warren W. Fane, Inc. v. Tri-State Diesel*,

---

[7] PACCAR argues that "Wisconsin Kenworth's representative signed both Warranties for a limited purpose, namely to attest to the date of delivery to . . . the plaintiff, and to verify that pre-delivery items had been performed." (Opp'n (dkt. #10) 2-3.) However, the warranties do not appear to support that interpretation. Wisconsin Kenworth's director of fleet sales signed below PACCAR's director of warranty and the date of sale, next to plaintiff's acknowledgements; only after the signatures, did the dealer's representative check off and initial pre-delivery items.



(Kenworth Truck Warranty (dkt. #2-2) 2; *see also* PACCAR Engine Warranty (dkt. #2-3) 2; Purchase Contract (dkt. # 2-1) 1.)

*Inc.*, No. 1:12-cv-1903, 2014 WL 1806773 (N.D.N.Y. May 7, 2014) (noting that the selling dealer had "disclaimed all warranties not contained in the written document," but explaining that "[t]he warranty clearly applies to [the selling dealer], as well as to Kenworth").[8] Thus, plaintiff has a reasonable probability of recovering against Wisconsin Kenworth. Indeed, as a practical matter, even if Kenworth is ultimately liable to Wisconsin Kenworth to reimburse it for any parts and service covered by the warranty, it is Wisconsin Kenworth that will have the customer interaction and perform the warranty work.

PACCAR relies on *Goudy v. Yamaha Motor Corp.*, 2010 WI 55, for the proposition that a dealer may sell a service contract without becoming a party to it (Not. Removal (dkt. #1) ¶ 27), but *Goudy* is distinguishable on its facts. In *Goudy*, it was *undisputed* that the seller had not entered into a service contract with the dealer, likely because the service contract was expressly between Yamaha and *Goudy*: "PLEASE READ THIS CONTRACT

---

[8] The Kenworth Warranty considered by the District Court for the Northern District of New York in *Warren W. Fane* appears identical in all material respects to that at issue here:
- "YOUR SOLE AND EXCLUSIVE REMEDY AGAINST KENWORTH AND THE SELLING DEALER ARISING FROM YOUR PURCHASE AND USE OF THIS VEHICLE IS LIMITED TO THE REPAIR AND REPLACEMENT OF 'WARRANTABLE FAILURES' AT AUTHORIZED UNITED STATES AND CANADIAN KENWORTH DEALERS . . . ." 2014 WL 1806773, at *8.
- "IT IS AGREED THAT KENWORTH AND THE SELLING DEALER SHALL NOT BE LIABLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES . . . ." *Id.*
- "This limited warranty is the sole warranty made by Kenworth and the Selling Dealer. Except for the above warranty, Kenworth and the Selling Dealer make no other warranties, express or implied." *Id.* at *13.

(*See* Kenworth Truck Warranty (dkt. #2-2) 1.) In *Warren W. Fane*, the agreement was signed by Kenworth Truck Company, the purchaser "and a representative of the authorized dealer." 2014 WL 1806773, at *13. Nevertheless, in *Warren W. Fane*, the selling dealer, Tri-State, argued that "the only warranty that can apply . . . is the express warranty provided by Kenworth"; and "Tri-State offered no distinct warranty separate from the Kenworth warranty." *Id.* at *11. While the *Warren W. Fane* court ultimately granted summary judgment to Tri-State *and* Kenworth on plaintiff's warranty claims because Kenworth had not breached the express warranty, it obviously viewed both to be legitimate defendants.

CAREFULLY. IT CONTAINS THE ENTIRE AGREEMENT *BETWEEN YAMAHA MOTOR CORPORATION, U.S.A. AND YOU*." *Goudy*, 2010 WI 55 ¶ 22 (emphasis added). The Wisconsin Court of Appeals explained that "not only is the service contract expressly between Yamaha and Goudy only, it also disavows any notion that Winnebagoland [the seller] could alter the terms of the contract in any way." *Id.* In contrast, as detailed above, the two manufacturer's warranties at issue here repeatedly inform the purchaser that the limited warranties are provided by the manufacturer "***and the selling dealer***." (*See* Kenworth Truck Warranty (dkt. #2-2) 1 (emphasis added); PACCAR Engine Warranty (dkt. #2-3) 1 (emphasis added).)

At most, by pointing out arguably inconsistent language in the parties' purchase agreement, PACCAR has created some doubt as to whether this express language means what it says, but that is not enough to meet its "heavy burden to establish fraudulent joinder." *Poulas*, 959 F.2d at 73. Accordingly, the case must be remanded to the state court.[9]

## II. Attorneys' Fees & Expenses

In his motion to remand, plaintiff requests "payment of just costs and actual expenses, including attorney's fees, incurred by the plaintiff as a result of the removal, as provided by 28 U.S.C. § 1447(c)." (Br. Supp. Mot. Remand (dkt. #7) 6.) Section 1447(c) requires a district court lacking subject matter jurisdiction to remand a case and permits the remanding order to "require payment of just costs and any actual expenses, including

---

[9] Because the court finds that remand is appropriate, it need not address defendant's argument concerning the amount in controversy.

attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Accordingly, a district court may only award fees and costs "when such an award is just" -- "where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 138, 141 (2005); *Bourdeau v. Credit Acceptance Corp.*, No. 16-cv-397-wmc, 2016 WL 7217863, at *2 (W.D. Wis. Dec. 13, 2016) ("A district court may award fees and costs under [§ 1447(c)], however, only where the removing party lacked an objectively reasonable basis for seeking removal." (citing *Martin*, 546 U.S. at 136); *Shakespeare Theatre Co. v. Lansburgh Theatre, Inc.*, No. 12-1030(RJL), 2012 WL 3018049, at *2 (D.D.C. July 24, 2012) ("An order remanding a case may, of course, require an award of attorney's fees and costs where the removing party lacked an 'objectively reasonable basis for seeking removal.'" (quoting *Martin*, 546 U.S. at 141)).

The Seventh Circuit has restated this "general rule" as follows:

> [I]f, at the time the defendant filed his notice in federal court, clearly established law demonstrated that he had no basis for removal, then a district court should award a plaintiff his attorneys' fees. By contrast, if clearly established law did not foreclose a defendant's basis for removal, then a district court should not award attorneys' fees.

*Lott v. Pfizer, Inc.*, 492 F.3d 789, 793 (7th Cir. 2007). In this case, the dearth of even persuasive case citations in the parties' briefs on the question of Wisconsin Kenworth's potential liability for breach of warranty underscores what the court essentially explained above: there is no "clearly established law demonstrat[ing] that [PACCAR] had no basis for removal." *Id.* Thus, plaintiff's request is denied.

13

ORDER

IT IS ORDERED that plaintiff's motion to remand (dkt. #6) is GRANTED, but his request for costs and expenses under § 1447(c) is DENIED.

Entered this 21st day of May, 2018.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge